No. 4872.

(Court of Appeal, Parish of Orleans.)

**GABRIEL MICHEL vs. GUSTAVE BALLAY.**

O. S. Livaudais for appellant.

James Wilkinson for defendant and appellee.

ST. PAUL, J.—This cause involves only questions of fact.

On Tuesday evening, February 18, 1908, about 6:30 p. m., one Adolphe Ballay, whilst passing on the public road in front of defendant's home, was bitten by a dog. At the same place and on the same evening, but about an hour later, plaintiff was also bitten by a dog.

Adolphe Ballay brought suit for damages almost immediately, and the case came on for trial almost at once before a jury, who brought in a "verdict of non-suit" (sic). The witnesses who testified in that case were the same as those who testified in this, and the present District Judge was counsel for defendant in that case.

This suit was brought after the elevation of defendant's former counsel to the bench. When the case was tried, no jury was asked for; the Judge was not asked to recuse himself, nor did he do so on his own motion. Whether or not the Judge might have been asked to recuse himself, or whether he should have done so are not questions before us, and it was stated from the bar that the recusation of the Judge, owing to peculiar conditions in the district, might have resulted in some serious inconvenience in the trial of the case. The fact, however, that plaintiff did not even pray for trial by jury shows that he had full confidence in the desire of the District Judge to do his duty impartially. And we must do the District Judge the simple justice of saying that we think he endeavored to do so; for, after a careful scrutiny of all his interlocutory rulings, we find them not only correct but eminently fair to both litigants.

At the same time we think he undertook to do the impossible. As an honorable counsel he, of course, believed in the justice of his client's defense, and the trustworthiness of the witnesses proffered in his behalf. As we have said, the two occurrences took place within an

hour, and the witnesses were the same in both cases, as well the defenses.

It was impossible for the Judge to render judgment for plaintiff unless he was in a position to weigh the testimony of plaintiff's witnesses and give it the effect to which it was entitled. But this, we think, was humanely speaking impossible under the circumstances. We can, therefore, attach no weight to his finding of facts, and will consider the evidence without regard thereto.

On the evening of February 18, 1908, about 7:30 p. m., plaintiff, whilst passing on the public road in front of defendant's home, was bitten by a dog. The question of fact herein presented is whether the dog which bit the plaintiff belonged to defendant or to someone else.

Considerable testimony was taken at the trial, which may be divided into three classes. **First.** The direct testimony; **second,** corroborating testimony, and **third,** testimony tending to impeach the witnesses.

There is direct testimony tending to show that defendant's dog was vicious in temper and had bitten others than plaintiff, and that defendant was aware of it. There is also direct testimony tending to contradict this. To the testimony on this subject we shall revert later.

On the main question, whether the dog which bit plaintiff belonged to defendant, we have the direct testimony of plaintiff himself and of one Leonard Buras that they saw the dog and recognized him as defendant's dog, with which they were perfectly familiar. The corroborative testimony on that subject is that of Adolph Ballay that the dog was loose that evening and had bitten him an hour before. Also the testimony of several others that the dog was often loose on the highway, was in the habit of attacking passersby, and had attacked them.

The direct testimony to the contrary is that of defend-

ant and defendant's son (a boy of 13 years), that the dog had been tied that evening about 5 o'clock, and was still tied in the same place next morning at 6 o'clock; and the corroborative testimony on this side is that of defendant and his son that the dog was always kept tied except for an hour or so during the middle of the day when defendant was at home, and was of gentle character. Also their own testimony and that of a neighbor "Boy" Elanore, that the latter owned vicious dogs which had been turned loose that night. There is also the evidence of two colored men that the dog was under defendant's house when they called at 4 o'clock in the morning to borrow a gun, but who do not say that the dog was tied. Their testimony proves nothing, for one of them says that he had seen the dog twice at the home of the other, which contradicts defendant's testimony that the dog was not allowed to roam.

Further corroboration is along the line of showing that the night was dark, and it had been raining during the evening.

Considerable testimony was taken for the purpose of impeaching that of Adolph Ballay, with a view of showing that he had admitted the next morning that he had been bitten by Chanove's dog, and not by defendant's. We do not think the attempt at impeachment was successful, but to avoid discussion of the point we may eliminate his testimony, which is only corroborative.

There is also testimony intended to impeach that of plaintiff by showing that he is on bad terms with defendant. Plaintiff admits that he is not on the best of terms with defendant, but they are not on such bad terms that they could not discuss on the public road, and in no unfriendly manner, the question of killing the dog, when, a few days before the present occurrence, plaintiff claimed to have been bitten a first time by the same dog.

It is further sought to impeach the testimony of plaintiff by showing that, although he claimed as a witness in the Adolph Ballay suit, that he had no interest therein, yet he declared outside the courthouse that if Ballay did not win his suit he (Michel) would then sue, also, that he told a witness that he was a fool for meddling in the suit between those two in the interest of defendant.

The testimony does not establish the claim that defendant took any interest in the result of Ballay's damage suit as such. And plaintiff admits that at all times he wanted to have the dog killed. He consulted counsel with that object in view primarily. But defendant has constantly refused to have the dog killed, there is no law in the State that allows a person bitten by a dog to cause him to be killed, and the only person who had any police power in the matter, the Sheriff, when called upon to kill the dog, did not feel that he had authority to do so.

A damage suit was, therefore, the only remedy left the plaintiff. The fact that he might have been satisfied had Ballay succeeded in bringing defendant to account, and had no wish to molest defendant further, unless it was a question of letting defendant get off scott free, speaks in his favor rather than against him, as tending to show that plaintiff is not actuated in the case by malice towards defendant, or for any pecuniary benefit that might result to himself. And we might say that his entire testimony impresses us with that belief. We, too, believe that had the dog been killed this suit would not have been brought, but defendant refuses to kill the dog, and plaintiff should not go without some redress. On the whole plaintiff has testified without evidence of bitterness toward defendant, and without the slightest endeavor to exaggerate the occurrence itself or the extent of his injury or sufferings. But there is not the slightest attempt on his part to disguise the fact that he thinks the dog a menace to the community, and wants him killed.

There is not the slightest evidence of any animosity entertained by plaintiff against defendant himself, nor is there the slightest attempt on plaintiff's part to disguise the fact that he had a desperate aversion to the dog, based, not only on any general ill-feeling towards him, but because of having been bitten by him twice. We do not think that that kind of feeling shows such a bias as to detract from the value of his testimony, perfectly satisfactory in all other respects.

As to the remarks to the witness Paul Hingle, it occurred according to that gentleman's own testimony, before Ballay had even thought of bringing suit, and evidently grew out of Hingle's having taken some volunteer part in endeavoring to dissuade defendant from complying with a request by the Sheriff to let Ballay kill the dog.

As to the witness Leonard Buras there is not the slightest endeavor to impeach his testimony in any way whatsoever, except by some testimony tending to show the night being dark. But it will be observed that the testimony as to the night being dark comes all from witnesses who came from inside of houses where the lights were bright, and, consequently, found themselves outside without their eyes having become gradually accustomed to the darkness.

Plaintiff and Buras, on the contrary, had been out whilst the daylight still shone, and the night had crept on them gradually. The pupils of their eyes had time to dilate slowly and gradually and to them the night was so far from dark that plaintiff was actually reading from a price-list when attacked by the dog, and was able to pick up his papers from the ground, where they had fallen.

This direct and positive testimony stands, therefore, opposed to the testimony of the defendant and his son

that the dog was tied; whose testimony, on the other hand, that the dog was tied, is contradicted by half a dozen witnesses, one of them their own. Furthermore, it is significant that defendant, when called on by Ballay and Sam Lyons to kill the dog, should not have thought of the fact that the dog was tied that night. This, according to his story, was the first time that he heard of anyone claiming that his dog had bitten him that night, and his own testimony is that he contented himself with the argument that Ballay had already killed Chanove's dog. It would have been more natural, had it been the truth, to say that the dog was always tied; that he was tied on that night in particular, and that he had been found tied again in the morning, than to have urged the right and reasonableness of plaintiff's present wish to kill defendant's dog and probable desire to kill Gourdano's dog next.

That the dog was a vicious one, was allowed to roam at large and had attacked several persons, this record leaves no room to doubt. But it is not so clear that defendant knew how bad the dog was. Of those who were attacked or bitten only one, Mr. David Ballay, notified defendant. This was some three years before the present occurrence, and possibly before the dog had become as valuable a hunting dog as he now appears to be. At any rate, on that occasion he offered to let the dog be killed, but, as the bite was slight, the bitten person did not take advantage of the offer. He was next notified by the present plaintiff after the latter was bitten the first time, about a week before the present occurrence. On that occasion he refused to have the dog killed. But at that time there was some feeling between the parties, and it is possible that he did not believe plaintiff.

Be that as it may, the "scienter" cannot affect plaintiff's right to recover, it can have a bearing only on the quantum.

On that subject it would answer no good purpose to go into the testimony in detail. Suffice it to say, the wound was a slight one. Plaintiff suffered some, though, in our opinion, very little, physically. On the other hand, to be bitten by a dog is always a subject for serious mental worry. Moreover, we feel that it is the duty of the owner of an animal, to inform himself of the disposition and temper of that animal before permitting him to roam at will. But at the same time we must be careful not to allow any excessive amount.

We, therefore, think on the whole that an allowance of $100.00 is a proper award.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff and appellant, Gabriel Michel, and against the defendant and appellee, Gustave Ballay, for the full sum of one hundred dollars, with legal interest from the date of this judgment until paid, and the costs of both courts.